Patricia Lee Refo (#017032)
Patrick A. Tighe (#033885)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: prefo@swlaw.com
  ptighe@swlaw.com

Matthew Borden, Esq. (*pro hac vice forthcoming*)
Tracy O. Zinsou, Esq. (*pro hac vice forthcoming*)
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210
E-Mail: borden@braunhagey.com
  zinsou@braunhagey.com

Attorneys for Petitioner BA Sports Nutrition, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BA SPORTS NUTRITION, LLC,<br><br>  Petitioner,<br><br>v.<br><br>TOP CLASS ACTIONS, LLC,<br><br>  Respondent. | Miscellaneous Case No:<br><br>Arising from Civil Action No. 3:20-cv-00633-SI, pending in the United States District Court for the Northern District of California<br><br>**PETITIONER'S RULE 45 MOTION TO COMPEL COMPLIANCE WITH SUBPOENA** |

4848-7656-4951.1

Petitioner BA Sports Nutrition, LLC ("BodyArmor") respectfully submits this Memorandum in support of its Motion to Compel Compliance with the Subpoena.

**INTRODUCTION**

This motion seeks to enforce a subpoena against Top Class Actions ("TCA") arising from an ongoing lawsuit in the Northern District of California.[1] TCA refused to timely respond to the subpoena at issue (the "Subpoena"), has offered pretextual reasons for its failure to comply, and has attempted to interpose various *post hoc* objections, which would lack merit even if they had not been waived.

BodyArmor makes a sports beverage from coconut water, electrolytes, and natural flavors. The Underlying Litigation is a putative class action asserting that Plaintiffs bought BodyArmor because they were misled by the term on the label "superior hydration," they were misled about the sugar content of the product, even though it is clearly stated on the label in conformance with FDA regulations, and they were misled by the pictures of fruit on the bottles. Plaintiffs' lawyers admittedly recruited the Plaintiffs through a solicitation posted on TCA's website. TCA bills itself as an advertising hub for attorneys who "have a case in mind but don't have the clients."[2]

Over a month ago, BodyArmor served the Subpoena on TCA requesting documents related to the recruitment of plaintiffs in the Underlying litigation, plaintiffs' lawyers' pattern of recruitment in similar class action cases, and TCA's role in this scheme. Such information is relevant to the issue of adequacy under Rule 23. *See, e.g.*, *Bodner v. Oreck Direct*, LLC, No. C 06-4756 MHP, 2007 WL 1223777, *2 (N.D. Cal. Apr. 25, 2007) (pattern of soliciting plaintiffs to bring "class actions" requires denial of class certification). After requesting an extension of time to respond to the Subpoena, which BodyArmor promptly granted, TCA failed to serve any objections or produce any documents in the requisite time. As required by Rule 45, and as Courts in this district repeatedly have held, TCA has waived any objections to the Subpoena under Rule 45 and must produce all

---

[1] *Silver v. B.A. Sports Nutrition, LLC*, No. 3:20-cv-00633-SI (N.D. Cal. 2020) (the "Underlying Litigation").

[2] www.topclassactions.com/attorneys.

4848-7656-4951.1

- 1 -

responsive documents immediately. *See, e.g., Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2014 WL 12526314, at *2 (D. Ariz. July 22, 2014); *Berrey v. Plaintiff Inv. Funding LLC*, No. CV-14-00847-PHX-BSB, 2014 WL 6908525 at *3 (D. Ariz. Dec. 92014).

TCA has since served belated objections along with a handful of documents, making the argument that "unusual circumstances" existed for TCA's wholesale failure to timely respond. No unusual circumstances exist here. TCA claims that it mistakenly believed that the Subpoena had been quashed, and only later realized that it was a different subpoena that had been quashed in the Underlying Litigation. This argument makes no sense. The Order TCA references was issued over a month *before* TCA was even served with the Subpoena. A court, of course, cannot quash a subpoena that has not yet come into existence. The Order, itself, makes no mention of the Subpoena, and further states that BodyArmor was required to seek documents from sources other than Plaintiffs' lawyers (e.g., sources such as TCA) before subpoenaing them from Plaintiffs' lawyers. Further, BodyArmor's granting of the requested extension should have made clear to TCA that the Subpoena was still valid and BodyArmor was expecting a response. As the party seeking to avoid compliance with Rule 45, TCA bears the burden of proving that exceptional circumstances exist here. In BodyArmor's efforts to meet and confer with TCA, it only provided that untenable excuse. No plausible justification exists for TCA's failure to timely respond.

Furthermore, TCA's substantive objections are meritless. First, the documents requested are indisputably relevant and targeted to a key issue in the Underlying Litigation. Soliciting plaintiffs is grounds for denying class certification. *See Bodner*, 2007 WL 1223777 at *2. As Judge Patel held: "Solicitation of clients for the commencement or continuation of a class action is improper, sufficient to warrant denial of class action certification." *Id.* Thus, discovery that may show that Plaintiffs were recruited rather than injured or part of a pattern of recruiting plaintiffs to manufacture putative class actions, is material to key issues in the Underlying Litigation. *Id.*

Finally, none of the materials requested are privileged as TCA claims. As TCA's own disclaimer on its website makes clear, responses to a solicitation by consumers through

4848-7656-4951.1

- 2 -

the form on TCA's website are not privileged. And Courts have similarly found that materials related to solicitation of potential plaintiffs in a class action are not privileged. *See, e.g.*, *Taylor v. Waddell & Reed, Inc.*, 2011 WL 1979486 (S.D. Cal. May 20, 2011).

For each of these reasons, BodyArmor's motion should be granted, and TCA should be ordered to fully comply with the Subpoena.

## BACKGROUND

### A. The Parties

#### 1. BodyArmor

BodyArmor was founded in 2011 with the goal of producing nutrient-enhanced beverages. BodyArmor Sports Drink® is made with coconut water, pure cane sugar, and natural flavors, as well as a proprietary blend of electrolytes and vitamins. BodyArmor's product has now become one of the most popular sports drinks in the country and is endorsed by the likes of Kyler Murray, Mike Trout, Megan Rapinoe, James Harden, Naomi Osaka, and many others.

#### 2. Top Class Actions

TCA runs the website topclassactions.com, which relies on advertising revenue from attorneys who "have a case in mind but don't have the clients"[3]:

TCA encourages attorneys to tap into its network of "685,000+ newsletter subscribers" and partner with them to build an advertising plan and solicit potential clients through their site to foment putative class actions against businesses (like BodyArmor)



---

[3] www.topclassactions.com/attorneys.

4848-7656-4951.1

across the country.

**B.     The Underlying Litigation**

On January 28, 2020, Plaintiffs Marc Silver and Alexander Hill filed a putative class action complaint against BodyArmor alleging various false advertising and common law claims. They later amended their complaint, following BodyArmor's successful motion to dismiss the original complaint, and their new claims are now predicated on three theories: first, that they were misled into buying the product by the phrase "superior hydration"; second, that BodyArmor's overall marketing was misleading because BodyArmor has more sugar than they think it should; and third, that the fruit images on BodyArmor's label misled them into believing its sports drink contained significant amounts of fruit. (Ex. 2. (First Amended Complaint))

Investigation and discovery revealed that rather than being injured and seeking out legal counsel, Plaintiffs were recruited through a misleading advertisement run on TCA.[4] On or around November 25, 2019,[5] Plaintiffs' lawyers posted an ad on TCA's website, stating: "Join a Free BodyArmor Class Action Lawsuit Investigation." (Ex. 3.) This statement was misleading because there was no true investigation occurring. The lawyers had already devised their claims, and it never costs any money to participate in an investigation. The lawyers were simply using the guise of an "investigation" to solicit plaintiffs. One of the Plaintiffs admitted at his deposition that he was misled by the nature of the advertisement because he did not "view it as a solicitation," and saw it as a "consumer good-related matter, not an advertisement for a law firm." (Ex. 4 (Hill. Dep. Tr.), 150:22-151:16.) Plaintiffs' lawyers' solicitation further stated: "Attorneys working with Top Class Actions are investigating whether BA lacks sufficient scientific evidence to back up such claims, which may render their labeling and advertising deceptive and unlawful." (Ex. 3.)

---

[4]Originally, there were four plaintiffs solicited through the website. One of them voluntarily dismissed his claims on April 7, 2020. (Underlying Litigation, Dkt. No. 25.) Another plaintiff dismissed her claims after BodyArmor noticed her deposition. (*Id.*, Dkt. No. 83.) There are only two plaintiffs left.

[5]A version of the advertisement obtained by BodyArmor using the Wayback Machine is dated November 25, 2019. (Ex. 3.) A version of the advertisement produced by TCA is dated November 21, 2019.

4848-7656-4951.1

1   This statement was also misleading because Plaintiffs' lawyers did not need any information from Plaintiffs to conduct such a purported inquiry. Plaintiff testified that he did not do any testing or participate in any studies about BodyArmor while being recruited. (Ex. 4 at 151:25-152:10.)

### C. Discovery on the Solicitation of Plaintiffs

On September 25, 2020, BodyArmor served document subpoenas on Plaintiffs' lawyers seeking, among other things, communications regarding the solicitation of plaintiffs in the Underlying Litigation and other similar putative class actions. Plaintiffs' lawyers moved to quash these subpoenas. On October 29, 2020, the Honorable Susan Illston issued an Order concluding that BodyArmor would need to show that it had first "attempted to seek the documents at issue from sources other than plaintiffs" before seeking documents from Plaintiffs' lawyers. (Ex. 5 ("Order") at 3.)

### D. The Subpoena to Top Class Actions

On November 30, 2020, consistent with Judge Illston's Order, BodyArmor issued the Subpoena to TCA. The Subpoena contains thirteen requests seeking documents regarding solicitation of plaintiffs by Plaintiffs' counsel using TCA's website, as well as documents regarding TCA's metrics or assessments of counsel's solicitations, and the payments and agreements relating to counsel's solicitations between TCA and counsel. (Ex. 1.) The Subpoena was properly served on TCA's agent for service on December 3, 2020. (Ex. 1 at 13 (Proof of Service))

### E. TCA's Failure to Timely Respond to Subpoena

After receiving the Subpoena on December 3, TCA remained silent for over a week, then, on, December 14, 2020, two days before the return date on the Subpoena, TCA requested "an extra week to respond" extending the deadline to respond until December 23. (Ex. 6 (Email correspondence between A. Wilkins and T. Zinsou) at 3.)  BodyArmor responded the same day agreeing to the extension and requesting that TCA also agree to produce any documents that it did not object to producing on that date. (Ex. 6 at 2.) After BodyArmor granted the extension, TCA again fell silent and then failed to serve any

4848-7656-4951.1

objections or produce any documents on December 23, the date it had requested. (*See* attached Certificate of Good Faith Consultation ("Certificate")).

On December 29, 2020, BodyArmor sent an email advising TCA that the deadline to respond had passed, and because it had failed to serve objections, "any objections to the subpoena have been waived under the Federal Rules and Top Class Actions must immediately produce all responsive documents." (Ex. 6 at 2.) BodyArmor then offered to meet and confer with TCA. *Id.* TCA responded on December 30 alleging, without further detail, that they "received notice that the subpoena had been quashed by plaintiffs' counsel" but after receiving BodyArmor's December 29 email, they "realized it was a separate subpoena that had been quashed." *Id.* at 1. BodyArmor responded a few hours later repeating that TCA's objections were now waived and again offering to confer. *Id.* TCA did not respond to either offer to confer. (Certificate).

On Thursday, December 31, 2020, TCA served untimely objections and responses to the Subpoena and produced 64 pages of emails and documents partially responsive to five of the thirteen requests in the Subpoena. (Ex. 7 (Letter from A. Wilkins and TCA's Objections and Responses)). On Tuesday, January 5, 2021, BodyArmor reiterated to TCA that its objections were untimely and, in any event, insufficient and improper. (Ex. 8 (Email correspondence between A. Wilkins and T. Zinsou) at 2-3). BodyArmor notified TCA that it intended to "file a motion to compel compliance with our subpoena if TCA refuses to provide the remainder of responsive documents immediately," and offered to meet and confer for the third time. *Id.* at 3. TCA failed to respond to this meet and confer request. BodyArmor placed a call to TCA's counsel on January 11 as a final good faith effort to confer and left a voicemail. (Certificate). TCA responded offering to confer the following day. (Ex. 8 at 2). On January 12, BodyArmor and TCA conferred by phone but did not resolve the issues raised in this motion. (*Id.* at 1; Certificate.)

## **ARGUMENT**

TCA has waived any objections to the Subpoena and should be ordered to immediately comply fully with the Subpoena. Rule 45 permits parties to obtain from

4848-7656-4951.1

1  nonparties the "production of documents, electronically stored information, or tangible
2  things at a place within 100 miles of where the person resides, is employed, or regularly
3  transacts business in person." Fed. R. Civ. P. 45(c)(2)(A).  Under Rule 45, the party serving
4  a subpoena "may move the court for the district where compliance is required for an order
5  compelling production…." Fed. R. Civ. P. 45(d)(2)(B)(i).  Any objection to a Rule 45
6  subpoena "must be served before the earlier of the time specified for compliance or 14 days
7  after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B).  When a party fails to meet this
8  deadline or file a motion to quash by the time of performance, that generally constitutes a
9  waiver of such objections.  *See, Sol*, 2014 WL 12526314 at *2 (D. Ariz. July 22, 2014)
10 (objections to subpoena were waived for failing to serve timely objections and ordering
11 subpoenaed party to produce responsive documents); *Berrey*, 2014 WL 6908525 at *3 (D.
12 Ariz. Dec. 9., 2014) (finding untimely objections waived).  TCA's failure to timely respond
13 constitutes such a waiver.  Further, no "unusual circumstances" exist here to excuse TCA's
14 untimely objections because the Subpoena is narrowly targeted to relevant materials, and
15 there is no adequate excuse for counsel's purported error and failure to timely respond.
16     Additionally, even if the Court excuses TCA's waiver, TCA's objections are
17 nonetheless insufficient to withhold the remaining responsive documents.

**I.     TCA FORFEITED ANY RIGHT TO OBJECT TO THE SUBPOENA**

19     TCA failed to respond to the Subpoena in the time required and has therefore waived
20 all objections to the Subpoena.  *Berrey* is instructive here.  2014 WL 6908525.  In *Berrey*,
21 defendant served document subpoenas on two non-parties.  *Id.* at *1.  When the return date
22 on the subpoenas passed without a response from the non-parties, defendant sent a letter
23 two weeks later stating that they would file a motion to compel if no response was received
24 within one week.  *Id.*  A few days later, the non-parties sent a letter with documents
25 responsive to the subpoena and asserted untimely relevance objections to the subpoenas.
26 *Id.*  Defendant informed the non-parties that the responses were incomplete and that a
27 motion to compel would be required if they did not provide complete responses.  *Id.*  After
28 additional correspondence reiterating these issues, defendant filed a motion to compel

4848-7656-4951.1

- 7 -

1    compliance with the subpoena. *Id.* at *2. The Court held that the non-parties' objections
2    were untimely and that they "have waived any objections based on relevance or materiality,
3    or that the subpoenas are overly broad, vague or unduly burdensome." *Id.* at *3 (collecting
4    cases). Similarly, here, after BodyArmor granted an extension of the return date on the
5    Subpoena, the deadline passed without any response from TCA. After BodyArmor
6    followed up with TCA, notifying them that their objections had been waived, only then did
7    TCA attempt to assert belated objections. Accordingly, the Court here should find that TCA
8    has waived all objections to BodyArmor's Subpoena.

## II. NO "UNUSUAL CIRCUMSTANCES" EXIST TO EXCUSE TCA'S FAILURE TO TIMELY RESPOND TO THE SUBPOENA

TCA's assertion that "unusual circumstances" exist to excuse their failure to respond is incorrect. (Ex. 7 at 1-2.) The three unusual circumstances courts consider are: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena. *See, e.g.*, *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. MC 13-004-TUC-CKJ, 2013 WL 5744045 at *3 (D. Ariz. Oct. 23, 2013). These conditions are not met here. Additionally, while "agency" and concomitant privilege is not one of the enumerated "unusual circumstances" courts consider, TCA nevertheless asserts it here. (Ex. 7 at 2.) This assertion is equally meritless.

### A. The Subpoena Does Not Exceed the Fair Bounds of Discovery

TCA asserts that because "at least some of" the Requests are "wholly unrelated to this litigation" the Subpoena is overbroad and sufficient to find "unusual circumstances." (Ex. 7 at 1-2.) This is incorrect. The Subpoena seeks only thirteen narrow categories of documents, including documents related to recruitment of potential plaintiffs in the Underlying Litigation, whether there has been recruitment by plaintiffs' counsel of plaintiffs in other matters, and the financial ties and arrangements between Plaintiffs' counsel and TCA in recruiting plaintiffs to their cause and fomenting class litigation. (Ex.

4848-7656-4951.1

- 8 -

1.) Each of these Requests is undisputedly relevant and within the fair scope of discovery.

### 1. Documents Related to Solicitation and Recruitment Are Relevant to Adequacy of Plaintiff's Lawyers to Serve as Class Counsel

Requests 1 and 3, and 5-8[6] seek various documents and communications relating to Plaintiffs' counsel's solicitation of potential plaintiffs in the Underlying Litigation and its other class action cases. TCA has produced a limited set of documents, including the solicitation Plaintiffs' lawyers posted on TCA's website that instigated the Underlying Litigation, communications between TCA and Plaintiffs' lawyers regarding their initial request for the ad to be run, and subsequent communications providing counsel with the apparently thousands of responses that TCA had received to the ad. (*See e.g.*, Ex. 9.) TCA, however, is withholding the responses themselves (which appear from the emails produced to have been sent to counsel as an Excel spreadsheet), as well as information related to any other putative class cases that TCA has helped Plaintiff's lawyers to initiate. TCA asserts that this information "about any putative plaintiffs other than Plaintiffs Marc Silver and Alexander Hill" or that is "unrelated to this litigation" is not relevant and renders these Requests overbroad. (Ex. 7 at 2-5.) TCA's assertion is incorrect.

These Requests target documents relating to Plaintiffs' lawyers' practice of soliciting plaintiffs using TCA's site, and TCA's role in assisting them to foment class litigation. These requests are highly relevant to adequacy under Rule 23, which is a bedrock requirement of class certification. *See* Fed. R. Civ. P. 23(a)(4); *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562 (2nd Cir. 1968) ("as a result of the sweeping changes in Rule 23, a court must now carefully scrutinize the adequacy of representation in all class actions.").

Courts in this Circuit have found that class certification should be denied when the putative class plaintiff was recruited. *See Bodner*, 2007 WL 1223777 at *2-3. In *Bodner*, Judge Patel denied class certification for lack of adequacy because she found that the plaintiffs had been recruited. She found that plaintiff's lawyer, and not plaintiff, was the

---

[6]TCA does not object to the relevance of Request 2. TCA objects to this (and other Requests) primarily on privilege grounds, discussed *infra* at III.B.

4848-7656-4951.1

- 9 -

"driving force behind" the litigation because the plaintiff admitted that he was recruited by plaintiff's lawyer through a newspaper solicitation, all of plaintiff's knowledge about the suit came from the lawyer, and plaintiff's lawyer had serially recruited plaintiffs in past cases. *Id.* at *2. Under these circumstances, Judge Patel held that this type of "class action" is improper because it is a lawsuit constructed by lawyers in search of a "client":

> That plaintiff's counsel constructed this lawsuit before it had a plaintiff cannot be denied. This fact is borne out not only by plaintiff's own admissions, but by plaintiff's counsel's previous abortive attempt to bring a seemingly identical lawsuit in another district. Indeed, counsel himself admitted at the hearing that he or his firm had the research performed on the product at issue and had a theory about the product's deficiencies. Then, armed with that information they went in search of a plaintiff …

*Id*. at *3.

Similarly, in *Sanchez v. Wal Mart Stores, Inc.*, the court concluded that plaintiff failed to prove adequacy where she had been recruited by counsel. 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009). The court held: "The record here demonstrates that Plaintiff's counsel, and not Plaintiff, is the driving force behind this action." *Id*. This was so because plaintiff only learned that she allegedly had a claim against defendants after counsel "contacted her and told her so." *Id.* The court rejected this "cart before the horse" approach to litigation finding it was "not the proper mechanism for the vindication of legal rights." *Id.*; *see also Moheb v. Nutramax Labs. Inc*., 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012).

Like the defendant in *Bodner*, BodyArmor is entitled to discovery that tends to prove that not only were Plaintiffs recruited, but that their recruitment was part of a broader pattern of constructing lawsuits and then finding plaintiffs to bring them. 2007 WL 1223777 at *2-3 (noting that "The instant action is nothing more than Westrup, Klick bringing its show to the Northern District and continuing its practice of selecting stand-in plaintiffs"). The solicitation Plaintiffs' lawyers ran on TCA's website suggested that potential plaintiffs were recruited for this case rather than injured. (Ex. 3.) One Plaintiff confirmed this, testifying that after submitting his response to the ad on TCA, and being contacted by Plaintiffs' lawyers but before engaging the law firm, he was told by counsel what the claims against

4848-7656-4951.1

- 10 -

1  BodyArmor would be, rather than vice versa:

> Q. Can you remember anything that she [Plaintiffs' counsel] told you about Body Armor?
>
> A. Yes. That they were looking for – to start a class action lawsuit because of misleading advertising.
>
> Q. And did she say in specific what she thought was misleading in Body Armor's advertising?
>
> A. Yes. That was mentioned.
>
> Q. What did she say?
>
> A. The nutritional information, it was similar to a Gatorade in terms of sugar. The fruit, there was actually no fruit in the product itself, but it was advertised that there was fruit on it and superior hydration.

(Ex. 4, 155:7-20.)

He also testified that he was actually misled about the nature of the solicitation posted on TCA. (Ex. 4 at 150:22-151:16.) Such misleading communications with a potential class action plaintiff have been found by at least one court to be "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requir[ing] denial of class certification." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 917-918 (7th Cir. 2011).

In light of these facts, BodyArmor has a reasonable basis for believing that additional responsive documents that TCA is withholding will tend to lead to evidence that it needs to defend this case and shed further light on Plaintiffs' lawyers' adequacy to serve as class counsel in the Underlying Litigation.

### 2. Payments and Agreements from Counsel to TCA for the Purpose of Fomenting Litigation are Relevant and Not Overly Broad

TCA similarly asserts that Requests 4 and 9-13 relating to agreements, payments and communications between TCA and Plaintiffs' lawyers going back four years are not relevant to the Underlying Litigation and are overly broad. TCA has refused to produce any documents relating to these requests beyond the few emails discussing posting of the ad for the Underlying Litigation, and payment in general terms. However, the documents

4848-7656-4951.1

being withheld likewise go to adequacy of counsel. To the extent TCA and Plaintiffs' lawyers have agreements or financial ties beyond one-off ads and related fees, those documents would be relevant to demonstrating counsel's scheme of seriatim recruitment of plaintiffs. The few emails produced by TCA show that counsel apparently engaged them for at least one other case earlier in 2019 prior to running the BodyArmor advertisement. (Ex. 9). TCA is, however, withholding documents related to that and other class litigation involving Plaintiffs' lawyers. BodyArmor is entitled to discovery on whether these were the only two times Plaintiffs' lawyers had ever used TCA's services, or whether they had a long-standing practice of using TCA to engage in misleading advertising to recruit stand-in plaintiffs for their class action practice.

### B. TCA Cannot Show That It Acted in Good Faith Or Notified BodyArmor of Any Issues Prior to The Time for Compliance

TCA appears to assert that it "acted in good faith" because it "erred in believing this subpoena had been quashed." However, any purported "unusual circumstances" arising from TCA's error is one of its own making. *See Baker v. Ensign*, No. 11-CV-2060-BAS WVG, 2014 WL 3058323, at *8 (S.D. Cal. Jul. 3, 2014). In *Baker*, defendant served a subpoena duces tecum on the Criminal Division of the San Diego City Attorney's Office, seeking a copy of their "entire file" involving defendant. *Id.* at *1. Defendant granted the Criminal Division an extension of one week to respond to the subpoena. *Id.* at *2. The extended deadline passed, and the Criminal Division failed to produce documents or serve objections. *Id.* at *3. Three days later, the Criminal Division made a belated production of the case file redacting information over which it was asserting privilege. Defendant responded stating that all objections were waived and ultimately moved to compel production of the unredacted records. *Id.* The Criminal Division asserted that the untimely production was the result of "confusion" between the Criminal and Civil Divisions as to which Division was responsible for responding to the subpoena duces tecum. *Id.* at *3-4, 8. In granting Defendant's motion to compel production of the redacted portions of the records, the Court found that "any 'unusual circumstances' of timely responding to the

4848-7656-4951.1

subpoena duces tecum was one of the Criminal Division's own making" because the Subpoena was directed to the Criminal Division and there "should not have been any confusion as to which Division…was responsible for responding to the subpoena." *Id.* at *8. Further, "any confusion…could have been avoided by a simple phone call or email between the attorneys." *Id.* Accordingly, the Court held that no good cause existed to excuse the untimely objection or late production of documents. *Id.*

Here, as in *Baker*, TCA's supposed error in failing to timely respond to the Subpoena is insufficient to find "unusual circumstances." TCA's explanation is that it failed to act diligently, not bothering to verify whether a validly issued and properly served subpoena had, in fact, been quashed. There is also no cogent legal argument, much less adequate excuse, for TCA's argument that the Order could have quashed the Subpoena. The Subpoena was issued on November 30, 2020 – over a month after the Order was issued. Further, even a cursory review of the Order shows that the Order expressly contemplated that BodyArmor would have to subpoena TCA directly for information related to Plaintiffs' lawyers use of TCA's website and services to engineer litigation.

In addition, the only contact BodyArmor had with TCA prior to the time for compliance was TCA's request for an extension of time to respond, which BodyArmor granted. TCA did not engage in any substantive discussions to, for example, raise potential issues it had complying with the Subpoena before the time for compliance had passed.

Therefore, TCA cannot show any "unusual circumstances" that justifies upholding its untimely objections.

**C.  TCA's Waived Privilege Objections Are Meritless and Do Not Constitute "Unusual Circumstances"**

TCA contends that "another unusual circumstance present here is that TCA is the agent of Plaintiffs' counsel" and that the Subpoena "attempts to obtain confidential and privileged information about the Plaintiffs" and other potential clients that TCA cannot waive. (Ex. 7 at 1-2.) TCA has provided no evidence and no authority, and BodyArmor is aware of none, that TCA's claimed relationship with Plaintiffs' lawyers constitutes

"unusual circumstances."  In any event, setting aside that TCA's privilege objections are waived, they also lack merit as discussed in further detail in Section III.B below.

### III. TCA'S UNTIMELY OBJECTIONS ARE INSUFFICIENT AND TCA SHOULD BE ORDERED TO COMPLY WITH THE REMAINDER OF THE SUBPOENA

To the extent the Court finds "unusual circumstances" exist to permit TCA's untimely objections, none of these objections are sufficient to withhold responsive documents.  As described above, TCA attempts to object on relevance grounds to production of documents related to other potential plaintiffs or other class actions for which Plaintiffs' lawyers used TCA to recruit.  TCA further objects that the Requests seek privileged information.  These untimely objections should be rejected, and TCA should be required to fully comply with the Subpoena.

#### A. The Requests Seek Relevant Targeted Information

TCA's relevance objections, in addition to having been waived, are meritless.  The test for relevance in the context of a Rule 45 subpoena is no different than the test under Rules 26 and 34.  *Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, 385 F.Supp.3d 863, 873 (D. Ariz. 2019).  Under the established standard for the scope of discovery under the Federal Rules, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1).  As discussed in detail in Section II.A above, each of the Requests is relevant to adequacy of Plaintiffs' lawyers to serve as class counsel in the Underlying Litigation.

#### B. The Documents at Issue Are Not Privileged

TCA's belated privilege objections are also without merit.  TCA asserts, that Requests 1-3, 5-7, and 11-13 seek privileged information.  TCA's primary privilege objection appears to be that "Potential clients communicated with Plaintiffs' lawyers through the medium of TCA's website, and such communications transmitted to the lawyers through email or email attachments are confidential and privileged."  (Ex. 7 at 4-5.)  However, TCA cannot show that such documents relating to solicitation of potential class

4848-7656-4951.1

plaintiffs are privileged.

First, TCA's own disclaimer on Plaintiffs' lawyers' solicitation warns that information provided by potential plaintiffs submitted through the site are not in fact privileged. This alone is fatal to their privilege claim:

> The information contained herein is not legal advice. Any information you submit to Top Class Actions ***does not create an attorney-client relationship and might not be protected by attorney-client privilege***. Instead, your information will be forwarded to an attorney or claims processing firm for the purpose of a confidential review and potential representation. ***You should not use this website to submit confidential, time-sensitive, or privileged information***.

(Ex. 3. (emphasis added))

Second, Plaintiffs acknowledge these materials regarding their solicitation are not privileged. Tellingly, one Plaintiff produced the form he filled out on TCA's website and testified about it at his deposition:

> Q. So Exhibit 10 is a document entitled, "TCA Investigation, Body Armor Super Drink, Top Class Actions, noreply@TopClassActions.com," dated 12/19/2019. It says to Maia Kats, MReese, ReeseLLP.com. Do you see that, Mr. Hill?
>
> A. Yes.
>
> Q. And so then it goes on to list some information for contact information for you and this was, in fact, the form -- a true and correct copy of the form that you filled out for TopClassActions.com; is that correct?
>
> …
>
> THE WITNESS: Certainly seems like it, yes.
>
> BY MR. BORDEN:
>
> Q. … December 19, 2019, is around the time that you remember filling out this form, correct?
>
> A. Yeah, that seems reasonable.

(Ex. 4 at 183:21-184:23.)

He further testified at his deposition that he understood his discussions with counsel prior to engaging them were not privileged, and testified about the process after he filled out the form on TCA's website and the content of his pre-engagement discussions with the

4848-7656-4951.1

lawyers:

> A. I believe what happened is I got a copy of my submission from the website, and then I was later contacted through e-mail to see if I wanted to proceed as a -- as a plaintiff in this case.
>
> Q. Who contacted you?
>
> A. I believe it was Maia [Plaintiffs' counsel].
>
> Q. You guys had a phone call?
>
> A. Yes, we spoke over the phone.
>
> Q. When you had this phone call, you understood that she didn't represent you at that point and that she was considering whether to take you on as client?
>
> …
>
> THE WITNESS: Yes, it was my understanding before I signed any paperwork with the firm that there was no legal representation at that time.
>
> Q. What did you talk about on the phone call with Maia?
>
> A. My history with Body Armor.
>
> …
>
> A. And my thoughts on the product.

(Ex. 4 at 153:5-154:2, 155:7-20.)

Third, Courts have found that such materials related to recruitment of prospective plaintiffs for a class action are not privileged. *See Auscape Int'l v. Nat'l Geographic Soc'y*, No. 92 CIV. 6441 LAK, 2002 WL 31250727, at *1 (S.D.N.Y. Oct. 8, 2002) (finding "letters to prospective clients to encourage their involvement in a class action" are not privileged); *Taylor*, 2011 WL 1979486 (finding plaintiff's lawyer's letter to putative class members and the responses not privileged or work product); *Schiller v. City of N.Y.*, 245 F.R.D. 112, 117-18 (S.D.N.Y. 2007) (finding no attorney-client relationship for pre-litigation questionnaires).

Accordingly, TCA's privilege objections should be overruled and TCA should be ordered to produce any documents it is currently withholding on these privilege grounds.

4848-7656-4951.1

- 16 -

## **CONCLUSION**

TCA failed to provide a timely response to BodyArmor's Subpoena. Because the requests at issue are not beyond the scope of reasonable discovery, TCA failed to lodge any timely objections, and TCA's untimely objections lack merit in any event, TCA should be compelled to comply with BodyArmor's straightforward requests. For the foregoing reasons, BodyArmor requests that this Court order TCA to fully comply with the Subpoena.

DATED this 14th day of January, 2021.

SNELL & WILMER L.L.P.

By: */s/ Patrick A. Tighe*
Patricia Lee Refo
Patrick A. Tighe
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for Petitioner BA Sports Nutrition, LLC

4848-7656-4951.1

- 17 -

**CERTIFICATE OF SERVICE**

I certify that I electronically transmitted the above document and its attachments to the Clerk's Office using the CM/ECF System for filing on January 14, 2021, that I transmitted via email a copy of the same to the following below on January 14, 2021, and that I transmitted via U.S. Mail a copy of the same on January 15, 2021 to the following:

Top Class Actions LLC
Amy Wilkins Hoffman
Laura Martinez
THE WILKINS LAW FIRM, PLLC (statutory agent)
3300 N. Central Ave., Ste. 2600
Phoenix, AZ 85012
awilkins@wilkinslaw.net
lmartinez@wilkinslaw.net

*Attorneys for Respondent*

Laurence D. King
Mario M. Choi
KAPLAN FOX & KILSHEIMER LLP
1999 Harrison Street, Suite 1560
Oakland, CA 94612
lking@kaplanfox.com
mchoi@kaplanfox.com

Maia C. Kats *(pro hac vice)*
KAPLAN FOX & KILSHEIMER LLP
6109 32nd Place, Northwest
Washington, DC 20015
mkats@kaplanfox.com

Donald R. Hall *(pro hac vice* to be sought)
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
dhall@kaplanfox.com

Michael R. Reese
REESE LLP
100 West 93rd Street, 16th Floor
New York, NY 10025
mreese@reesellp.com

George V. Granade
REESE LLP
8484 Wilshire Blvd., Suite 515
Los Angeles, CA 90211
ggranade@reesellp.com

*Attorneys for Plaintiffs in the Underlying Civil Action*

                                              */s/ Catherine A. Ward*

4848-7656-4951.1