1  Amy M. Hoffman  (SBN 022762)
2  Laura C. Martinez (SBN 031486)
   THE WILKINS LAW FIRM, PLLC
3  3300 N. Central Ave., Ste. 2600
   Phoenix, AZ  85012
4  Tel:  602-795-0789
   awilkins@wilkinslaw.net
5  lmartinez@wilkinslaw.net

6  Attorneys for Top Class Actions, LLC

7

8              IN THE UNITED STATES DISTRICT COURT

9               FOR THE DISTRICT OF ARIZONA

10 In Re: BA SPORTS NUTRITION, LLC,
   LITIGATION                              Case No. 2:21-mc-00001-GMS
11
   Case No. 3:20-cv-00633-SI              **RESPONSE TO BA SPORTS
12                                        NUTRITION'S MOTION TO
                                          COMPEL**
13 Northern District of California

14

15         Top Class Actions, LLC, ("TCA") submits this response in opposition to BA Sports

16 Nutrition, LLC, ("BA") Motion to Compel. This Court should deny BA's Motion to Compel

17 because the documents sought by BA are protected by attorney-client privilege,

18 confidentiality, attorney work-product, and lack relevance. Further, TCA requests that this

19 Court find that unusual circumstances exist for TCA's failure to timely respond to BA's

20 subpoena, and therefore TCA has not waived any of its objections.

21                              **Background**

22         TCA operates a website that contains content about class action settlements,

23 investigations, and lawsuits. Some of the web pages on the site are attorney advertising. For

24 example, a law firm that is involved with a particular class action might pay TCA to run

25 content that explains a particular class action investigation to website users and invite

26 website users to fill out a form on the website to connect with an attorney.

27     **A.  TCA's Process in Generating Content**

28

TCA's website contains two types of content: (1) attorney advertising and (2) other content written by TCA relating to particular class actions. The attorney advertising content is paid for and reviewed by the sponsoring attorney. Other content is written by writers paid by TCA and is not reviewed by an attorney.  (Ex. A, Decl. of Steve Williams at ¶ 3.)

As for the attorney advertising, TCA works with the lawyers who are bringing a lawsuit to determine the content for the advertising campaign. The lawyers share their thoughts on the lawsuit, the information they believe potential plaintiffs might need, and other thoughts, opinions, and mental impressions about the content of the campaign. (Ex. A, Williams Decl. at ¶ 4.) TCA and its writers exchange drafts of the advertising material with the lawyers supervising the advertising, and the lawyers provide suggestions, mental impressions, opinions, and comments on the material based on their knowledge of the strategy for the lawsuit.  (Ex. A, Williams Decl. at ¶ 5.)

**B. Engagement with Potential Class Members or Plaintiffs**

On some web pages, TCA provides forms for potential plaintiffs or class members to fill out so that those putative class members or plaintiffs may connect with lawyers. The web pages are replete with information explaining that the form content will be sent to a lawyer, confidentially, so that the potential plaintiff's claim can be evaluated by a lawyer.

In this case, TCA was engaged by a client law firm to promote the BA class action investigation. A typical article, "BodyArmor SuperDrink Class Action Investigation" describes the product produced by BA that was the subject of a complaint in front of the Better Business Bureau for deceptive marketing claims.  (Ex. B.) It further describes an ongoing investigation that was being conducted by Plaintiffs' attorneys regarding false advertising claims. *Id.* The article concluded with "if you purchased Body Armor Super Drink you may qualify to join this false advertising class action lawsuit investigation.  See if you qualify by filling out the form on this page." *Id.*

The form that runs down the side of the webpage also makes plain that the form is to be filled out for a case evaluation by an attorney. It says "Join a Free BodyArmor Class

Action Lawsuit Investigation. If you qualify, an attorney will contact you to discuss the details of your potential case at no charge to you." *Id.* At the end of the form, the user must check a box stating he or she understands and agrees to the following:

> Any information you submit to Top Class Actions may be shared with attorneys or law firms to facilitate formation of an attorney-client relationship. As such, it is intended that the information will be protected by attorney-client privilege, but it is possible that Top Class Actions or such attorneys may be ordered by a court of law to produce such information in certain legal situations. Also, you are not formally represented by a law firm unless and until a contract of representation is signed by you and the law firm.

> ☐   I understand and agree.

*Id.* When a user inputs information on the form and clicks "submit," the information on the form is transmitted directly to the law firm sponsoring the advertising. (Ex. A, Williams Decl. at ¶ 9.)

In its legal notice on its website, Top Class Actions explains, again, that users' content it provided directly to law firms for purposes of possibly establishing an attorney-client relationship: "TCA discloses personally identifiable individual information and other information you provide us to lawyers or law firms whose advertising you are responding to. The information you provide to us to be transmitted to lawyers or law firms is considered confidential by TCA and is transmitted for purposes of possibly establishing an attorney-client relationship with the law firm." See Legal Notice, available at https://topclassactions.com/top-class-actions-legal-notice/ (last visited January 27, 2021).

**C. The Subpoena**

In a patent attempt to gather communications between plaintiffs or putative class members and their lawyers, BA served TCA with a subpoena on December 3, 2020. The subpoena sought communications and documents between TCA, Plaintiffs' law firms, claimants, and potential claimants. On December 14, 2020, TCA requested an extension of time to respond to the subpoena. After sending this request to opposing counsel, TCA sent

3

a second email to counsel for BA stating: "Please disregard; I was informed this subpoena was quashed." (Ex. C, email dated Dec. 14, 2020.) After receiving this email, BA did not correct TCA or advise that the subpoena was still valid. Instead, BA merely sent a response stating it would agree to an extension of time. Based upon this email exchange, TCA was under the impression that the subpoena had been quashed and that no response was necessary.

On December 29, 2020, TCA received an email from counsel for BA stating that the deadline to respond to the subpoena had passed, that TCA had therefore waived all objections, and demanded production of all responsive documents listed in the subpoena. In response, on December 30, 2020, counsel for TCA responded and explained that there had been a misunderstanding and that a response to the subpoena would be provided as soon as possible. TCA explained: "On the day I emailed you for an extension, I received notice that the subpoena had been quashed by plaintiffs' counsel. Upon receipt of your email yesterday, we realized it was a separate subpoena that had been quashed. I apologize for the error." (Ex. D, email dated Dec. 30, 2020.) TCA then served its objections, redacted documents, and privilege log on BA on December 31, 2020. TCA objected that the communications with law firms were protected work product, because the lawyers' mental impressions of the case were reflected in their communications about the content of the web pages. TCA objected to producing information about the putative class members or plaintiffs on two grounds: attorney-client privilege, as the information was provided for purposes of connecting a client with a lawyer for possible representation, and confidentiality, pursuant to the lawyer's duty to keep information about clients confidential.

Despite being notified of this error and receiving TCA's objections and redacted documents responsive to the subpoena on December 31, 2020, counsel for BA continued to insist that TCA had waived its objections. On January 12, 2021, the parties conducted a telephonic meet-and confer, during which TCA maintained its objections to the subpoena and BA maintained its position that these objections had been waived. BA then filed this motion.

## Argument

### I.    TCA's Objections Can Be Considered by this Court

TCA has not waived its objections to the subpoena as unusual circumstances and good cause exist for this Court to consider the objections.  When a non-party does not respond to a subpoena in the time required, a court may still consider the objections of the non-party if the non-party can prove: (1) that unusual circumstances and good cause exist, and (2) the non-party was acting in good faith.  *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002).  Here, there are several unusual circumstances that would permit this Court to consider TCA's objections: (1) the subpoena is overbroad; and (2) TCA is the agent of Plaintiffs' counsel and the subpoena attempts to obtain confidential and privileged information about the Plaintiffs.  Further, TCA has acted in good faith.

### a.  The Subpoena Is Overbroad

Pursuant to *Sanchez Y Martin, SA de CV v. Dos Amigos, Inc.*, 2018 WL 2387580 (S.D. Cal. 2018), an overbroad subpoena is sufficient for a finding of unusual circumstances. *See also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("Courts have found unusual circumstances where, for instance, the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith.") (internal citations omitted).

Here, the subpoena is overbroad on its face and therefore unusual circumstances exist. The subpoena is overbroad because it seeks documents "related to" solicitations or advertisements but fails to specify a time period for this request and fails to provide a specific request for what is actually being requested.  Further, the subpoena requests documents and communications regarding other lawsuits that are not the subject of the current action pending in California.  Finally, the subpoena requests communications and documents "regarding Body Armor or this lawsuit, including without limitation any publications by you."  Despite BA's contention, these requests are not "narrowly tailored."

### b.  TCA Is the Agent of Plaintiffs' Counsel

Further, TCA is the agent of Plaintiffs' counsel and the subpoena attempts to obtain confidential and privileged information about the Plaintiffs. *See* Section II.  Since multiple

unusual circumstances exist here, this Court can, and should, consider TCA's objections to the subpoena.

### c. TCA Acted in Good Faith

Non-party, TCA, has acted in good faith since it received the subpoena. Initially, TCA erred in believing that this subpoena had been quashed. After sending an email to counsel for BA asking for an extension, undersigned counsel sent a second email stating "Please disregard; I was informed this subpoena was quashed." (Ex. C.) Despite receiving this email communication, counsel for BA failed to correct counsel's understanding that the subpoena had been quashed. Had BA's counsel, a party to the case that has a much better understanding of the current pleadings and orders, notified undersigned counsel that they were incorrect in this belief, this matter could have been expeditiously resolved. Instead, counsel for BA failed to advise undersigned counsel of the erroneous belief and then proceeded to demand production of documents on December 29, 2020.

Upon receiving BA's demand for production, counsel did additional research regarding the pleadings and orders in this case and realized that the order quashing the subpoena was not in relation to the subpoena issued to TCA, but rather related to a subpoena issued to Plaintiffs' counsel. As soon as TCA realized its error, it immediately contacted counsel for BA, prepared a privilege log, provided redacted documents, and provided BA's counsel with its objections.

Since TCA has acted in good faith, unusual circumstances exist that permit this Court to consider TCA's objections to BA's subpoena.

## II.   The Subpoena seeks Attorney-Client Privileged Communications Made through an Agent of the Attorney

The subpoena requests, "all communications between you, Kaplan Fox, and/or Reese related to soliciting or advertising for participants or prospective plaintiffs in a lawsuit or potential lawsuit against BodyArmor." The subpoena also requests, "all communications and documents related to any metrics or data you created or maintained related to BodyArmor or this lawsuit, including without limitation how many views any solicitations

or advertisements related to BodyArmor or this lawsuit received, how many responses were made to such solicitations or advertisements, information about individuals who responded to such solicitation or advertisements, and any other data collection, tracking, or analytics you have done regarding BodyAmor or this lawsuit."

If this request were sent to the Plaintiffs' law firm directly, there would be no argument here: the information sought would be plainly privileged.  In fact, in a recent decision issued by the Northern District of California where this suit is pending, the Court quashed a subpoena requesting the same information that was sent to the Plaintiff's counsel directly.  *See* Case No. 3:20-cv-00633-SI Dkt. No. 71 (attached as Ex. E.)  Specifically, the subpoena requested, among other things, "all communications between [plaintiffs' counsel] and topclassactions.com and/or the persons who own, control or run this website."  In ruling on Plaintiffs' motion to quash, the Court held: "Here, defendant has failed to satisfy the first prong of the *Shelton* test, as it appears that defendant is in the process of seeking the same documents from *the plaintiffs themselves*."  (Ex. E.) (emphasis added).  Pursuant to *Shelton*, defendants may depose opposing counsel when "(1) no other means exist to obtain the information…(2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."  *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).  Despite Defendant's contention, the Court did not hold that Defendants could seek this information from TCA.  (Ex. E.)  Rather, the Court indicated that Defendants were already seeking information from the Plaintiffs themselves regarding Defendant's claim of solicitation.  (Ex. E.)

Here, the question is whether the privilege applied by the Northern District of California to Plaintiffs' counsel is lost, or never applied, if the communication is made through an agent of the lawyer.  Top Class Actions respectfully contends it is not.

### a.  Information Provided by a Potential Client to a Lawyer is Privileged

Users of the website use forms on the website to communicate with a lawyer about their potential claim or potential lawsuit.  Again, if the putative plaintiff used the lawyer's

own website, there would be no issue, as the Northern District of California already held. Further, the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 (hereinafter "Restatement") provides:

> Except as otherwise provided in this Restatement, the attorney-client privilege may be invoked as provided in § 86 with respect to:
> (1)    A communication
> (2)    Made between privileged persons
> (3)    In confidence
> (4)    For the purpose of obtaining or providing legal assistance for the client.

Privileged persons, as referenced in Section 68(2), include potential clients: "Privileged persons within the meaning of § 68 are the client (including a **prospective client**), the client's lawyer, agents of either who facilitate communications between them, and agents of the lawyer who facilitate the representation." *Id.* § 70 (emphasis added). And "[a] communication is in confidence within the meaning of § 68 if, at the time and in the circumstances of the communication, the communicating person reasonably believes that no one will learn the contents of the communications except a privileged person as defined in § 70 or another person with whom communications are protected under a similar privilege." *Id.* § 71.

Likewise, the ethical rules provide that a communication from a prospective client may not be revealed. *See e.g.,* ABA Model Rule 1.18(a)-(b): Duties to Prospective Client ("A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client. Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.").

A potential client filling out a form on a lawyer's website to obtain representation is making a privileged communication. *In Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1106 (9th Cir. 2005), Plaintiffs sued the manufacturer of Paxil, SmithKline

Beecham Corporation, and the plaintiffs' lawyers used a form on their website to gather possible clients. As in the BA case, "Plaintiffs did not initiate contact with their lawyers by walking into the law office. Instead, the law firm posted a questionnaire on the internet, seeking information about potential class members for a class action the law firm contemplated." *Barton*, 410 F.3d at 1106. The law firm attempted to make plain that no attorney-client relationship would be formed by the form submission; it stated that the form was for "information gathering." Defendant sought the information provided in the forms in discovery.

In reviewing whether the privilege applied, the Ninth Circuit focused on what the client would expect in filling out the form. The court agreed that the law firm's disclaimer language was vague but held that the client had not waived privilege through a vague disclaimer: "But the vagueness and ambiguity of the law firm's prose does not amount to a waiver of confidentiality by the client. Our focus is on the clients' right, not the lawyers.'" *Id*. at 1111. "The questionnaire is designed so that a person filling it out and submitting it is likely to think that he is requesting that the law firm include him in the class action mentioned at the beginning of the form." *Id*. The court continued, "The questionnaire is ambiguous, but the plaintiffs should not be penalized for the law firm's ambiguity. It is their privilege, not any right of the lawyers, that is at stake. A layman seeing the law firm's internet material would likely think he was being solicited as a potential client." *Id*. at 1110.

Here, the potential plaintiffs filling out TCA's form had an even stronger expectation that their communications would be privileged. In the *Barton* case, the form stated, "The purpose of this questionnaire is to gather information about potential class members... We will also use your contact information to keep you updated on developments of the litigation." *Id*. at 1107 n.4. TCA's form, to the contrary, invites website users to fill out a form to connect with an attorney and specifically provides that the information is shared with attorneys to facilitate formation of an attorney-client relationship. The only issue for

the court is whether this privilege is lost because the form appears on topclassactions.com instead of the lawyer's own website.[1]

BA fails to consider this duty of confidentiality owed to potential clients and attempts to argue that since users of the website had not yet signed formal representation agreements, no privilege attached to their communications.  In support of its argument,  BA cites to the deposition of a Plaintiff where he stated: "[i]t was my understanding before I signed any paperwork with the firm that there was no legal representation at that time." (cite).  Yet TCA is not arguing that the users of the website were automatically clients of the law firms once they submitted forms regarding the underlying lawsuit.  Instead, these users are *potential clients*, and some even become actual clients, of the law firms. The duty of confidentiality is no different to potential clients than it is to actual clients.

### b.  A Potential Client Filling Out a Form with a Lawyer's Agent Is Entitled to Privilege Protection

A putative class member or potential plaintiff communicating through TCA's website would have the expectation of privilege, as examined through the lens of the Restatement.

### i.  A Form Submission Is a Communication

The form submission is a communication. RESTATEMENT § 68(1). Website users submit their information to have their information evaluated by an attorney and to see if they can participate in a class action or other action.

---

[1] Because TCA's website provides a form for users to fill out that is directly transmitted to the sponsoring law firm, and the information is stored on a TCA database solely for use in connection with the marketing, TCA is really a form of "cloud computing." As the Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility explained, "If an attorney uses a Smartphone or an iPhone, or uses web-based electronic mail (e-mail) such as Gmail, Yahoo!, Hotmail or AOL Mail, or uses products such as Google Docs, Microsoft Office 365 or Dropbox, the attorney is using "cloud computing." (Ex. D, PA Bar Op. 2011-200.) No one would seriously contend that use of Office 365 waives the privilege. Here, TCA's form submissions go directly to the law firm, and it keeps a confidential record for the law firm. It does not share that data with anyone else or review the data for any purpose other than communicating with the law firm. (Ex. A, Williams Decl. ¶¶ 6, 10, 11.) It is providing its technology to the lawyer.

### ii.  The Form Submission Is Made Between Privileged Persons

The communication is made between privileged persons, as potential clients making communications to lawyers are privileged persons. *Id.* § 68(2). Section 70 of the RESTATEMENT makes reference to agents as "privileged persons": "Privileged persons within the meaning of § 68 are the client (including a prospective client), the client's lawyer, agents of either who facilitate communications between them, and agents of the lawyer who facilitate the representation." RESTATEMENT § 70. An agent of the lawyer is one employed by the lawyer "to assist the lawyer in the rendition of professional legal services." *See id.* cmt. g (citing Revised Uniform Rules of Evidence, Rule 502(a)(4) (1974)). "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or ***those reasonably necessary*** for the transmission of the communication."). *Id.* (quoting Rule 502(a)(5)). Here, TCA's website is simply a reasonably necessary means of transmission of the communication.

Use of a third-party's website, or even a form available on social media, is a logical evolution of the process by which lawyers find clients. This evolution has been acknowledged by the courts. As the Ninth Circuit stated in Barton, "There would be no room for confusion [about waiver of the privilege] had the communication been in the traditional context of a potential client going into a lawyer's office and talking to the lawyer. The changes in law and technology that allow lawyers to solicit clients on the internet and receive communications from thousands of potential clients cheaply and quickly do not change the applicable principles." *Barton*, 410 F.3d at 1112. The next change in law and technology is that law firms are using third parties to assist them in soliciting clients on the internet.

The agency exception to waiver applies to disclosures of information to agents of the attorney when the communication is necessary for the provision of legal advice. *In In re Int'l Oil Trading Co.*, 548 B.R. 825 (S.D. Fla. 2016), the court found that litigation funders, who provide financial assistance to law firms to prosecute claims, are considered agents within the privilege. In making this holding, the court reviewed the Florida statute on

privilege, which protects communications with those "to whom disclosure is in furtherance of the rendition of legal services to the client." The court concluded that the privilege protects "communications with any party who assists the client in obtaining legal services." *Id*. at 834. The court concluded litigation funders "fall in this category." *Id*. Litigation funders fell into the agency exception because without litigation funders, parties might have reduced or no ability to pursue their claims. *See id*. at 835.

Here, TCA provides a service that is analogous. Class actions exist, in part, to provide a remedy for small wrongs made on a large scale. Class actions are often useful when an individual action might not be worth pursuing. This is exactly the sort of claim in which parties might have reduced or no ability to pursue their claims without the help of an agent. TCA helps the parties become aware that a class action is being investigated or pursued and facilitates the participation in that action.

While TCA is not a lawyer referral service, another analogy can be made in that TCA, like a lawyer referral service, assists lawyers and clients in connecting with each other. Lawyer referral services have been held to be within the privilege. The American Bar Association's Rule XIV of the Model Supreme Court Rules Governing Lawyer Referral and Information Services states: "A disclosure of information to a lawyer referral service for the purpose of seeking legal assistance shall be deemed a privileged lawyer-client communication." The purpose of this rule is illustrated in the comments, which provide that "since a client discloses information to a lawyer referral service for the sole purpose of seeking the assistance of a lawyer, the client's communication for that purpose should be protected by lawyer-client privilege." Rule XIV cmt. Consistent with the Model Rule, several states have enacted rules that prohibit the disclosure of information provided to lawyer referral services if the purpose of the communication is to seek legal assistance. *See* California Evidence Code § 996(a); O.R.S. 40.225; N.Y. Judiciary Law App. at 498; Utah Evid. R. 504. In every state where these rules have been enacted, the purpose for such rules is the same—to encourage the public to seek legal assistance.

By protecting communications between clients and lawyer referral services, potential clients are encouraged to seek legal assistance and advice. This public policy of encouraging

the public to seek legal counsel can best be served by holding that the communications between the claimants and TCA are confidential communications protected by attorney-client privilege. To hold otherwise could have a chilling effect on individuals who legitimately need legal assistance but do not know how to go about obtaining it.

### iii.   The Potential Client Has an Expectation of Confidentiality

The potential client or website user has a reasonable expectation that the communication made via the website form is made in confidence. The form provides: "[I]t is intended that the information will be protected by attorney-client privilege…" *Id*. § 68(3). The Legal Notice on the website provides, "The information you provide to us to be transmitted to lawyers or law firms is considered confidential by TCA and is transmitted for purposes of possibly establishing an attorney-client relationship with the law firm." *See* Legal Notice, available at https://topclassactions.com/top-class-actionslegal-notice/ (last visited July 1, 2020).

BA attempts to argue that since one of the Plaintiffs in the underlying lawsuit disclosed his intake form, then none of these forms must be privileged or confidential. This meritless argument fails to consider the principle that the client, and only the client, may waive the privilege. Here, there was one Plaintiff who agreed to disclose his intake form. Therefore, we have a very limited waiver as to this one piece of information from only one plaintiff. To disclose every piece of information received from the potential clients, each potential client would have to similarly consent to the disclosure. This has not occurred. One individual's consent cannot be held to apply to all other individuals.

### iv.   The Communication is Made for the Purpose of Obtaining Legal Assistance

Last, as website users are filling out the form to see if they "qualify" to join a class action investigation and to be contacted by an attorney, the communication is made "for the purpose of obtaining or providing legal assistance for the client." *Id*. § 68(4).

## III.   TCA, as the Lawyer's Agent, Must Protect Client Confidentiality

A lawyer has a duty of confidentiality to protect information about the client. "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent." ER 1.6(a). This duty is broad. It even extends to the client's name,

not just the content of the communication. It applies during a consult (before the lawyer is retained) and after the representation has ended. *See* ER 1.18(a)-(b) ("A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client. Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information...").

Similarly, the agent of a lawyer owes a duty of confidentiality. *See, e.g.,* RESTATEMENT § 60 (2000) ("Agents of a lawyer assisting in representing a client serve as subagents and as such independently owe a duty of confidentiality to the client."). BA argues that because TCA is not "assisting in representing a client," the lawyer's duty of confidentiality does not extend to TCA.

A lawyer has a duty of confidentiality to a prospective client.  Notably, comment e to the RESTATEMENT makes plain that "The duty of confidentiality continues so long as the lawyer possesses confidential information." RESTATEMENT § 60 cmt. E; *see also* RESTATEMENT (SECOND) OF AGENCY § 395 ("[A]n agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency…"). The duty of confidentiality exists to protect clients and the public. Confidentiality encourages disclosure of information by a client seeking the assistance of a lawyer. *See* ER 1.5 cmt. 2 ("The public is better protected if full and open communication by the client is encouraged than if it is inhibited. The client is thereby encouraged to seek legal assistance…").

BA argues that TCA itself alerts users the information is not confidential, but this is not the case. TCA appropriately tells website users that TCA is not a law firm—this much is true. But the web pages advertising the BA case also say, "If you purchased Body Armor Super Drink, you may qualify to join this false advertising class action lawsuit investigation. See if you qualify by filling out the form on this page." After the form, the page provides that information will be submitted to law firms "to facilitate formation of an attorney-client

relationship. As such, it is intended that the information will be protected by the attorney-client privilege…" (Ex. E.) TCA also shares an appropriate disclosure that the web page is attorney advertising, that it is not a lawyer, and that, "Any information you submit to Top Class Actions does not create an attorney-client relationship and might not be protected by attorney-client privilege. Instead, your information will be forwarded to an attorney or claims processing firm for the purpose of a confidential review and potential representation. You should not use this website to submit time-sensitive, or privileged information." *Id*. This is certainly an appropriate disclaimer given that BA has attempted to gather access to user's information submitted through this form. But the question for the Court again comes back to the lawyer's duty and the client's expectation. The client is submitting the information to a lawyer for a case evaluation. This is confidential information. The fact that TCA included a disclaimer does not make it not confidential.

**IV.     The Subpoena Seeks Documents Protected as Attorney Work-Product**

BA is also attempting to use a subpoena to gain access to the mental impressions and opinions of the Plaintiffs' lawyers about the BA case. This end-run around work product protection should not be condoned by this Court. As stated above, a lawyer is responsible for the content of attorney advertising; as such, law firms review the proposed web page content before it is published on TCA's web site. TCA has emails between its writers and editors and the lawyers responsible for the content providing comments, edits, and other thoughts on the content and campaign. Here, TCA redacted communications between TCA and the law firms relating to the attorney advertising. TCA produced those emails that did not reflect the lawyer's mental impressions or opinions of the content.

The advertising in this case is meant to inform potential claimants that they may have claims and invite those who may be affected to participate. Here, TCA's marketing was meant to inform consumers of BodyArmor Sports Nutrition that they might have a claim based upon false advertising. TCA's writers can draft the content, but the lawyers are masters of the claim and strategy. The lawyers' comments on the marketing reflects their

15

opinions of the claim and strategy. They must be permitted to keep their comments confidential.

### V.  BA Makes No Reasonable Relevance Arguments

BA argues that the requested documents are relevant to its claim of solicitation and cite to several cases that relate to class certification and solicitation.  These cases, however, do not support BA's relevance argument.

The cases cited by BA, according to BA, all hold that class certification may be denied where plaintiffs' lawyer, rather than plaintiff, is the "driving force" behind the litigation.  *See Bonder v. Oreck Direct, LLC*, 2007 WL 1223777 at *2-3 (N.D. Cal. 2007) (denying class certification where plaintiffs' counsel was found to be the "driving force" behind the litigation); *Sanchez v. Wal Mart Store, Inc.*, 2009 WL 1514435 at *3 (E.D. Cal. 2009) (denying class certification where the requirements of typicality and adequacy were not met); *Moheb v. Nutramax Laboratories*, 2012 WL 6951904 at * (C.D. Cal. 2012) (denying class certification where the requirements of commonality and typicality were not met and finding that there was an appearance of a conflict between the class representative and her counsel due to a long-time friendship).    Yet none of the cases cited to by BA support its argument that the documents requested in its subpoena are relevant to the issues underlying the BA litigation.  In fact, none of the cases cited by BA discuss subpoenas or discovery at all.

BA argues that because class certification is at issue, then whether Plaintiffs' lawyers have engaged TCA in the past for different class action lawsuits is relevant.  In *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777 at *2-3 (N.D. Cal. 2007), the court did not state that all prior litigation of plaintiffs' counsel was relevant to the decision of class certification.  Instead, the court discussed prior litigation that plaintiffs' attorney had brought solely because the prior litigation concerned the same product and the same defendant.  *Id.* ("That plaintiff's counsel constructed this lawsuit before it had a plaintiff cannot be denied.  This fact is born out not only by plaintiff's own admissions, but by plaintiff's counsel's previous

abortive attempt to bring a seemingly identical lawsuit in another district.").  The court in *Bodner* did not discuss discovery concerns, relevancy issues, or motions to quash.  Instead, the court's sole focus was on whether class certification was appropriate.  *Id.*

Here, BA is not requesting information solely on lawsuits brought by Plaintiffs' law firm against BA itself or any of BA's products, but rather is requesting *all* information on *all* lawsuits that the law firms have brought in the past where they worked with TCA for advertising.  This request is not only overly broad but is also irrelevant.  A request for all communications between Plaintiffs' law firm and TCA for the past 5 years, regardless of which lawsuit (if any) the communications may be referencing, is not "narrowly tailored" as BA claims.  Instead, this is an extremely broad request that is unlikely to lead to the discovery of admissible evidence.

Further, BA argues that the request for "all communications and documents related to the fees you charge related to any solicitations or advertisements regarding Body Armor or this lawsuit" is relevant to the issue of class certification.  Yet this argument similarly fails to provide this Court with any legal authority to show how advertising fee agreements are relevant to the issue of class certification.

### Conclusion

Based on the foregoing, TCA respectfully requests that this Court deny BA's Motion to Compel.

RESPECTFULLY SUBMITTED this 28th day of January, 2021.

THE WILKINS LAW FIRM, PLLC

By: /s/ Laura C. Martinez
    Amy M. Hoffman
    Laura C. Martinez
    3300 N. Central Ave., Ste. 2600
    Phoenix, AZ  85012
    Phone:  602-795-0789
    awilkins@wilkinslaw.net
    lmartinez@wilkinslaw.net

*Attorneys for Top Class Action*

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021, I electronically transmitted the foregoing document to the Clerk of the U.S. District Court using the CM/ECF system for filing and service to all parties/counsel registered to receive copies in this case.

By /s/ Cheryl Hays
Cheryl Hays