1  Patricia Lee Refo (#017032)
   Patrick A. Tighe (#033885)
2  SNELL & WILMER L.L.P.
   One Arizona Center
3  400 E. Van Buren, Suite 1900
   Phoenix, Arizona  85004-2202
4  Telephone: 602.382.6000
   Facsimile:  602.382.6070
5  E-Mail: prefo@swlaw.com
              ptighe@swlaw.com
6
   Matthew Borden, Esq. (*pro hac vice*)
7  Tracy O. Zinsou, Esq. (*pro hac vice*)
   BRAUNHAGEY & BORDEN LLP
8  351 California Street, 10th Floor
   San Francisco, CA 94104
9  Telephone: (415) 599-0210
   Facsimile:  (415) 599-0210
10 E-Mail: borden@braunhagey.com
              zinsou@braunhagey.com
11
   *Attorneys for Petitioner BA Sports Nutrition, LLC*
12
13              IN THE UNITED STATES DISTRICT COURT
14              FOR THE DISTRICT OF ARIZONA
15
16 BA SPORTS NUTRITION, LLC,                    Misc. Case No: 2:21-mc-00001-GMS
17              Petitioner,
                                                Arising from Civil Action No. 3:20-cv-
18    v.                                        00633-SI, pending in the United States
                                                District Court for the Northern District
   TOP CLASS ACTIONS, LLC,                      of California
19
              Respondent.                       **PETITIONER'S REPLY IN**
20                                              **SUPPORT OF RULE 45 MOTION**
                                                **TO COMPEL COMPLIANCE WITH**
21                                              **SUBPOENA**
22
23
24
25
26
27
28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

4844-5615-2796.1

In its Opposition, Top Class Actions ("TCA") does not extenuate its refusal to produce documents and only provides further proof that it should be compelled to turn over the evidence it is improperly withholding. TCA runs a website that has fomented thousands of class actions in federal courts across the country, including the underlying action in California against BodyArmor. By virtue of collecting and tracking data from purported class members about their experiences with BA Sports Nutrition, LLC ("BodyArmor"), TCA is a repository of key information about the claims in the underlying case, *i.e.*, whether everyone in the putative class was uniformly misled by the term "superior hydration," fooled into believing that sports drinks have fruit in them, and misled by the sugar content of the product, even though it is disclosed in the Nutrition Facts as required by the FDA. Basic fairness dictates that TCA should have to produce such information to the party forced to defend the lawsuit TCA helped instigate.

TCA seeks to avoid waiver by claiming that it thought that the Court in California quashed the Subpoena issued by this Court. (Doc. 4 at 6.) But it offers no explanation of how it could have thought that when (a) the Order TCA supposedly relied on issued *before* the instant subpoena even existed, (b) the Order TCA supposedly relied on expressly stated that BodyArmor needed to seek documents from third parties, such as TCA, to get the information it needed, (c) TCA never moved to quash any subpoena, and (d) only this Court, where compliance is required, can quash the Subpoena. TCA has failed to prove that "unusual circumstances" relieved it of its obligation to timely respond to the Subpoena. The Court, therefore, need not consider any of TCA's objections, and TCA should be ordered to fully and immediately comply with the Subpoena.

In any event, the remainder of the Opposition is equally meritless. TCA devotes 10 pages to arguing that the public's responses to solicitations that TCA posted on its public website are somehow privileged. But after filing its Opposition, TCA reversed field and produced over 2,000 customer responses. (Exhibit 10.) TCA did not explain whether its production comprised all customer responses or all documents responsive to Request No. 1. TCA should thus be ordered to produce all documents responsive to this request.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

At present, the categories of documents that TCA is still withholding are, at a minimum: (a) metrics, tracking data and assessments by TCA related to the solicitation in the BodyArmor lawsuit (Requests 5-8); (b) documents related to solicitations by plaintiffs' lawyers through TCA in other class actions (Request 3); and (c) documents related to TCA's agreements with plaintiffs' lawyers, fees charged, and money paid by the lawyers to TCA (Requests 4, 9-10).[1] TCA's remaining argument for not producing such materials is that BodyArmor's document requests are overbroad or irrelevant, without really explaining why. (Doc. 4 at 5, 14-25.) These arguments make no more sense than the "privilege" arguments that TCA once urged the Court to adopt.

*First*, the data TCA keeps on the putative class members is relevant to their heterogeneity. *Second*, the materials related to repeat solicitations by plaintiffs' lawyers go to the adequacy of such lawyers under Rule 23(a)(4). TCA admits that *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007), held that "class certification may be denied where plaintiffs' lawyer, rather than plaintiff, is the 'driving force' behind the litigation." (Doc. 4 at 16.) But the fact that the plaintiff's lawyers had repeatedly engaged in this "'cart before the horse' approach to litigation" is precisely why the Court in *Bodner* denied class certification under Rule 23(a)(4). 2007 WL 1223777 at *2-3. BodyArmor will similarly show that just like in *Bodner*, plaintiffs' lawyers repeatedly devised lawsuits then "went in search of a plaintiff" aided by TCA. *Id*. at *3.

*Third*, the agreements and money exchanged between TCA and plaintiffs' lawyers (in other words, how much they are paying for clients) are similarly relevant to adequacy. They are also relevant to, at least, the existence and nature of the "agency" relationship which TCA claims exists and whether plaintiffs' lawyers have conflicts with the class relevant to adequacy through their relationship with TCA.

For all these reasons, the Court should grant BodyArmor's motion and order TCA to fully and completely respond to BodyArmor's Subpoena.

---

[1] TCA has produced some documents responsive to Requests 1-2 and 11-13. It is not clear, however, whether TCA is still withholding additional responsive documents based on its untimely objections.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

## ARGUMENT

## I.   TCA FAILS TO PROVE THAT "UNUSUAL CIRCUMSTANCES" EXIST

TCA does not address or distinguish the cases cited in BodyArmor's Motion at 7-8, all of which apply the automatic waiver provision in Rule 45 to circumstances indistinguishable from those here.  Nor does TCA meaningfully defend the position that it took during the meet-and-confer process, *i.e.*, that it had "mistakenly" believed that the Subpoena was quashed. Instead, TCA makes three equally unavailing arguments, as to why it believes that it has carried its burden of proving that "unusual circumstances" exist: (a) the subpoena is overbroad (b) TCA is the agent of Plaintiffs' lawyers and (c) TCA acted in "good faith." (Doc. 4 at 5-6.)  As discussed in BodyArmor's Motion and below, these arguments are unfounded.

### A.   TCA's Overbreadth Argument Does Not Prove that Any "Unusual Circumstances" Exist Here

As detailed in BodyArmor's Motion at 8-12, TCA's argument that the subpoena is overbroad does not constitute "unusual circumstances." (Doc. 4 at 5).  TCA cites to only two non-precedential cases without explanation.  (*Id.*) In both cases, a party to the case made *timely* objections to the subpoenas, though the third-party subpoena recipient itself did not timely object.  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, 2018 WL 2387580, at *4 (S.D. Cal. May 24, 2018).

Moreover, neither of these cases supports TCA's assertion that any claim that a subpoena is overbroad amounts to "unusual circumstances" under Rule 45. To the contrary, it is common for parties to disagree about the scope of discovery; that is precisely why timely objections must be made under Rule 45. *SCP Pool* and *Dos Amigos* stand for the proposition that if a subpoena is so grossly overbroad that a Court cannot, in good conscience, enforce it, "unusual circumstances" might be found. For example, in *SCP Pool*, the Court found that the subpoena imposed an undue burden because it sought "information over a ten year or greater period," and the documents could "more easily and inexpensively"

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

be obtained from a party.  *Id.* at 637-38.  The court also found that the requests were overbroad because they sought information about the nonparty's business relationships with other unrelated nonparties.  *Id.*

Here, the requests to TCA stand in sharp contrast to those in *SCP Pool*.  They cover much narrower time periods than ten years.  Some requests are limited to a four-year period to cover the statute of limitations for the claims in the Underlying Litigation,[2] and others are naturally limited in time to solicitations for the Underlying Litigation which was filed one year ago.[3]  Further, unlike in *SCP Pool*, BodyArmor has already sought to obtain the documents from plaintiffs' lawyers, but the Court in the Underlying Litigation ordered BodyArmor to first seek the documents from "sources other than plaintiffs."  (Doc. 1-8 at 3.)  Unlike in *SCP Pool*, TCA does not argue that any of the requests impose an actual burden on TCA or that responsive documents would be too voluminous to produce.  Finally, unlike the requests in *SCP Pool*, which sought information from unrelated non-parties, the requests here are limited to the lawyers and putative class in question.

TCA makes only three one-sentence, conclusory assertions that the Subpoena is overbroad.  (Doc. 4 at 5.)  None of these has merit.

First, TCA claims that the Subpoena "seeks documents 'related to' solicitations or advertisements but fails to specify a time period for this request and fails to provide a specific request for what is actually being requested."  (*Id.*)  The request that TCA appears to be referencing is simple and, contrary to TCA's assertions, contains specific examples of what is being requested: Request No. 1 seeks: "All documents related to soliciting or advertising for participants or prospective plaintiffs in a lawsuit or potential lawsuit related to BodyArmor, ***including without limitation social media postings, "newsletters," articles,***

---

[2] *See, e.g.*, **Request No. 9**: "All communications and documents related to any agreements between you, Kaplan Fox and/or Reese within the last four years."; **Request No. 10**: "All communications and documents related to any money paid to you by Kaplan Fox or Reese within the last four years, including without limitation any advertising fees." (Doc. 1-4 at 11).

[3] *See, e.g.*, **Request No. 4**: "All communications and documents related to the fees you charged related to any solicitations or advertisements regarding Body Armor or this lawsuit."

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

*consumer guides, and emails*." (Doc. 1-4 at 10.) TCA has had no problem interpreting this request and has produced the solicitation itself and a handful of documents discussing the solicitation.

Second, TCA asserts that the Subpoena "requests documents and communications regarding other lawsuits that are not the subject of the current action pending in California." (Doc. 4 at 5.) While TCA does not expand on this assertion in its section re overbreadth, it discusses the issue further in its "relevance" argument, arguing that prior litigations are not relevant to the decision on class certification. (Doc. 4 at 16-17). TCA's argument, however, relies on a misreading of *Bodner*. *Bodner* involved a denial of class certification where plaintiff's lawyer had engaged in wide-scale, seriatim recruitment of plaintiffs both in the present class action case and in past cases. (*See* Doc. 1 at 9-10.). TCA's assertion that *Bodner* only discussed prior litigation of the plaintiff's lawyer "solely because the prior litigation concerned the same product and same defendant" is wrong. (Doc. 4 at 16.) In fact, *Bodner* notes that the plaintiff's lawyer had previously recruited plaintiffs, and this weighed heavily in the Court's decision to deny class certification:

> Furthermore, the Westrup Klick firm has had trouble regarding its choice of plaintiffs in the past. *See Apple Computer, Inc. v. Superior Court*, 126 Cal.App.4th 1253, 24 Cal.Rptr.3d 818 (2005) (disqualifying the Westrup Klick firm from a class action case where it was established that, "from 2003 to 2005, Westrup Klick and [another firm] had jointly filed **10 class actions** under [California's Unfair Competition Law] in which an attorney from Westrup Klick or a relative of one of the attorneys was the named plaintiff"). **The latest filing is just one more example of plaintiff's counsel's improper approach to consumer litigation**.

*Bodner*, 2007 WL 1223777, at *2-3. While TCA argues that *Bodner* has nothing to do with discovery issues, it has everything to do with why the information BodyArmor seeks is relevant. Facts surrounding how many times plaintiffs' lawyers have solicited potential plaintiffs in this manner and the circumstances under which they have done so are highly relevant to adequacy as *Bodner* makes clear. Here, the few emails that TCA produced reveal that Plaintiffs' lawyers have solicited plaintiffs in this manner in at least one other case. (*see* Doc. 1 at 12.) BodyArmor needs information about that solicitation (and any

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

- 5 -

other class cases for which the lawyers have solicited plaintiffs through TCA) to properly defend itself when plaintiffs seek to certify a class in the Underlying Litigation.

TCA also contends that requests[4] seeking TCA's agreements with plaintiffs' lawyers and fee arrangement with those lawyers are not relevant.  (Doc. 4 at 17.)  These agreements and fee arrangements are relevant to how much Plaintiffs' lawyers are paying for clients, which is relevant to adequacy. They are also relevant to, among other things, the existence and nature of the "agency" relationship that TCA alleges exists between itself and plaintiffs' lawyers, and whether plaintiffs' lawyers have conflicts with the class through their relationship with TCA given the nature of the compensation structure.  In its brief, TCA likens itself to a "litigation funder" (Doc. 4 at 11-12).[5]  The Court in California previously found that agreements with litigation funders are relevant to issues of adequacy and are discoverable.  *Gbarabe v. Chevron Corp.*, No. 14-CV-00173-SI, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) at *1.  The agreement between TCA and plaintiffs' lawyers is therefore relevant to determining how the solicitation scheme came about and the details of this scheme including additional evidence of its impropriety which would directly bear on adequacy of counsel.

Third, TCA complains that the Subpoena requests "communications and documents regarding BodyArmor or this lawsuit, including without limitation any publications by you."  (Doc. 4 at 5.)  TCA does not explain why this request[6] is overbroad.  The request seeks documents relating to BodyArmor and the Underlying Litigation that TCA has in its possession.  Presumably these are limited to the solicitation that it posted and that helped to

---

[4] **Request No. 4**: "All communications and documents related to the fees you charged related to any solicitations or advertisements regarding Body Armor or this lawsuit."; **Request No. 9**: All communications and documents related to any agreements between you, Kaplan Fox and/or Reese within the last four years."; **Request No. 10**: "All communication and documents related to any money paid to you by Kaplan Fox or Reese within the last four years, including without limitation any advertising fees." (Doc. 1-4 at 11.)

[5] TCA has sponsored thousands of putative class actions, including a case against Icelandic Yogurt for not being from Iceland, Sorta Sweet ice tea for being too sweet, King's Hawaiian Rolls for not being made in Hawaii, Pantene Shampoo for not being "natural," and Chobani vanilla flavored yogurt for not having vanilla beans, to name a few. (Exhibit 11.)

[6] **Request No. 13**: All communications and documents regarding BodyArmor or this lawsuit, including without limitation any publications by you. (Doc. 1-4 at 10-12).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

foment this litigation against BodyArmor, but to the extent TCA has generated further publications on the lawsuit or discussed matters regarding putative class members that would bear on Rule 23 issues of commonality, typicality and predominance of common issues among the putative class, BodyArmor is entitled to that information. *See* Fed. R. Civ. Proc. 23(a), (b)(3). The documents TCA is withholding are, therefore, not overly broad and are relevant to class certification and issues of adequacy.

### B.    Alleged "Agency" Does Not Create "Unusual Circumstances"

TCA claims that because it is supposedly Plaintiffs' lawyers' "agent" it should be excused from failing to timely object. (Doc. 4 at 5-6.) Notwithstanding that TCA has not shown that it is in fact Plaintiffs' lawyers' "agent" (by, for example, producing its agreement with the lawyers), "agency" is not one of the specifically enumerated "unusual circumstances" considered by courts. *See, e.g.*, *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. MC 13-004-TUC-CKJ, 2013 WL 5744045 at *3 (D. Ariz. Oct. 23, 2013). TCA cites no law and provides no legal analysis on this point—because it cannot. (Doc. 4 at 5-6.) Instead, TCA asks this Court to create a rule that effectively exempts so-called "agents" of lawyers from complying with the Federal Rules and responding to subpoenas in a timely manner. Such a rule cannot be justified, and TCA does not attempt to do so.

### C.    TCA Did Not Act in Good Faith

TCA's argument that it acted in "good faith" in responding to the Subpoena is also meritless. Much like its "agency" argument, TCA fails to cite any authority whatsoever on this point. (Doc. 4 at 6.) TCA also does not attempt to distinguish the case law cited by BodyArmor or address any of the reasons BodyArmor raises for why TCA's "error" was unreasonable. (Doc. 1 at 12-13.)

TCA's main contention appears to be that BodyArmor is somehow at fault for TCA's choice to disregard a lawful subpoena. (Doc. 4 at 6.) BodyArmor never told TCA it was free to ignore the Subpoena. It did just the opposite by granting TCA an extension of time to respond. TCA does not disclose who supposedly "informed" TCA that the Subpoena had been quashed. (Doc. 4 at Ex. C.) Nor does it explain how it in good faith came to believe

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

that the Subpoena had been quashed, given that this Court never issued any such order, and the order it claims to have relied upon issued *before* the Subpoena even existed, and instructed BodyArmor to seek documents from TCA. (Mot. at 13.) A subpoena is a Court Order. As the decisions cited in the moving papers and unaddressed by TCA all hold, a recipient ignores a subpoena at its own peril, and waiver is the consequence for disobedience. TCA's cavalier failure to take any steps to assess its obligation to comply with a Court Order is its own fault.

Moreover, TCA's good faith argument is even less convincing given that it asserted, and asked the Court to endorse, meritless privilege objections, which it withdrew after explaining its unflagging duty to protect the privilege, as discussed further below. (Doc. 4 at 6-15; Ex. 10.) TCA has not acted in good faith and has not met its burden of showing "unusual circumstances." The Court should, therefore, stop its inquiry here and order full compliance with the Subpoena.

## II.    TCA'S PRIVILEGE OBJECTIONS LACK MERIT

Should the Court consider TCA's objections, TCA has now forfeited its main privilege argument, and its relevance arguments (as discussed above) do not hold water.

### A.    TCA Has Forfeited Any Claim of Attorney-Client Privilege

In its Opposition, TCA argued that users of its website "use forms on the website to communicate with a lawyer about their potential claim or potential lawsuit" arguing that the content of these "form submissions" is privileged because TCA is acting as an "agent" of the lawyers. (Doc. 4 at 6-15.) Since filing its brief on January 28, however, TCA has abandoned this privilege argument. On January 29, less than 24 hours after filing its brief and devoting nearly ten pages to arguing that the information was privileged, TCA emailed BodyArmor stating that it "has decided to go ahead and produce the content of the form submissions" to BodyArmor. (Ex. 10.) Then, on February 3, TCA produced a spreadsheet containing the form data submitted by over 2,000 people in response to the solicitation. (*Id.*)

TCA's extraordinary move effectively admits that ten pages of its brief was devoted

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

to frivolous arguments.  TCA could not have believed that the information was privileged. Otherwise this unprompted, wholesale abandonment of its privilege claims—which under the Rules of Professional Conduct must be protected at all costs—is inexplicable. Nor could it have any colorable basis for making this objection, as shown in its own form, which it attached as Exhibit C to its own Opposition:

> advice. Any information you submit to Top Class Actions does not create an attorney-client relationship and might not be protected by attorney-client privilege. Instead, your information will be forwarded to an attorney or claims processing firm for the purpose of a confidential review and potential representation. You should not use this website to submit time-sensitive, or privileged information. All photos contained on this website are of models and do not depict clients.

Nor is there any merit to TCA's "agency" theory. TCA makes conclusory allegations that it is an "agent" of plaintiffs' lawyers but has not produced its agreement to meet its burden of showing that the purpose of its retention was for the provision of legal advice, rather than for a purely marketing purpose (as would seem to be the case based on the vague declaration TCA provided).  *See Visa U.S.A., Inc. v. First Data Corp.*, No. C-02-1786JSW(EMC), 2004 WL 1878209, at *7 (N.D. Cal. Aug. 23, 2004) (finding a nominal third party is only an agent for privilege purposes where engaged for a "legal  purpose" and rejecting claim of privilege where "the engagement letter…makes clear the business purpose of [the] retention.").

In sum, TCA's "privilege" objections were interposed for the wrongful purpose of obstructing BodyArmor's access to evidence. Moreover, to the extent that any supposed privilege existed, TCA's voluntary production of more than 2,000 communications constitutes a subject-matter waiver of privilege.  *Weil v. Inv./Indicators, Research and Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject"); *U.S. v. Plache*, 913 F.2d 1375, 1380 (9th Cir. 1990) (disclosure of privileged communication waived privilege "on all other communications on the same subject"). Such waiver would include TCA's claim that its own internal metrics

4844-5615-2796.1

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

and tracking about responses made to the solicitation for the lawsuit against BodyArmor[7] are privileged. TCA makes no arguments independent of the ones it asserted regarding the TCA admittedly non-privileged form responses. (Doc. 4 at 6-15.)  Because TCA's privilege assertions rely on these prior arguments that TCA has now abandoned and that are unsupported in any event, as shown above and in BodyArmor's Motion at 14-16, TCA should be ordered to produce these documents.

## B.    TCA's Work Product Arguments Are Also Meritless

TCA briefly argues, without citation to any case, that some of its communications with plaintiffs' lawyers reflect the "mental impressions or opinions of the content" of the lawyers and are thus work product. (Doc. 4 at 15.) This argument fails for many reasons.

First, TCA does not even explain the legal standard for work product, much less make the evidentiary showing necessary to assert this qualified protection. In its Opposition, TCA admits that it communicated with plaintiffs' lawyers about their *marketing* strategies. (Doc. 4 at 2; Doc. 4-1 at ¶¶ 4-6.) It is well established that providing marketing advice is not protected by the work product privilege. As one Court explained, "'public relations advice, even if it bears on anticipated litigation, [generally] falls outside the ambit' of the work product doctrine." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 435 (S.D.N.Y. 2103) (alterations in original) (quoting *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 78 (S.D.N.Y.2010) (quoting *Calvin Klein Trademark Trust*, 198 F.R.D. at 55)). "[T]he work product doctrine does not extend to public relations activities even if they bear on the litigation strategy because 'the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally.'" *Id.* (quoting *Calvin Klein Trademark Trust*, 198 F.R.D. at 55); *Anderson v. SeaWorld Parks & Entm't,*

---

[7] **Request No. 5**: "All communications and documents related to any metrics or data you created or maintained related to BodyArmor or this lawsuit, including without limitation how many views any solicitations or advertisements related to BodyArmor or this lawsuit received, how many responses were made to such solicitations or advertisements, information about individuals who responded to such solicitation or advertisements, and any other data collection, tracking or analytics you have done regarding BodyArmor or this lawsuit." (Doc. 1-10 at 6-7.)

4844-5615-2796.1

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

*Inc.*, 329 F.R.D. 628, 637, 639 (N.D. Cal. 2019) (work product protection does not attach to attorney's work directing marketing campaign).

Second, the work product doctrine only applies to parties that anticipate being in litigation. *U.S. v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). TCA offers no proof that it was anticipating being sued or suing anyone.  Nor does it claim to be transmitting any legal advice. In fact, Exhibit C to the Opposition shows that TCA repeatedly *disclaims* that the work it generates constitutes legal analysis or advice:

> PAID ATTORNEY ADVERTISEMENT: THIS WEB PAGE IS AN ADVERTISEMENT AND THE PARTICIPATING ATTORNEY(S) ARE INCLUDED BECAUSE THEY PAY AN ADVERTISING FEE. Top Class Actions is not a law firm, lawyer referral service, or prepaid legal services plan. We do not endorse or recommend any third-party claims processing company, lawyer, or law firm who participates in the network. We do not make any representation, and have not made any judgment, as to the qualifications, expertise, or credentials of any participating lawyer or processing group. No representation is made that the quality of the legal services or claims processing to be performed is greater than the quality of legal services or claims processing performed by other lawyers or claims processing group. The information contained herein is not legal advice. Any information you submit to Top Class Actions does not create an attorney-client relationship and might not

The TCA website further states "You should consider all the postings or writings on TopClassActions.com by staff or others as personal opinion and NOT the advice of a lawyer." (Id.) TCA also admits that its writers "can draft the content" of the solicitations but provides no explanation as to why any drafts created by its own writers or any comments or assessments[8] by these writers would be work product.  (Doc. 4 at 15).

For these reasons, TCA has not carried its burden of proving that these documents are privileged and should be ordered to produce them.  *Weil*, 647 F.2d at 25 (burden "rests not with the party contesting the privilege, but with the party asserting it").

## CONCLUSION

For the foregoing reasons and those stated in BodyArmor's Motion, the Court should order TCA to full comply with the Subpoena.

---

[8] **Request No. 7**: "All communications and documents related to any review or assessment of any solicitation or advertisement related to BodyArmor or this lawsuit." (Doc. 1-4 at 11)

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    DATED this 11th day of February, 2021.

2                                              SNELL & WILMER ʟ.ʟ.ᴘ.

3

4                                  By:/s/  Patrick A. Tighe
                                           Patricia Lee Refo
5                                          Patrick A. Tighe
                                           One Arizona Center
6                                          400 E. Van Buren, Suite 1900
                                           Phoenix, Arizona  85004-2202
7                                          *Attorneys for Petitioner BA Sports*
                                           *Nutrition, LLC*
8

9                                              BRAUNHAGEY & BORDEN LLP.

10

11                                 By:/s/  Tracy O. Zinsou (*w/ permission*)
                                           Matthew Borden, Esq. (*pro hac vice*)
12                                         Tracy O. Zinsou, Esq. (*pro hac vice*)
                                           351 California Street, 10th Floor
13                                         San Francisco, CA 94104
                                           *Attorneys for Petitioner BA Sports*
14                                         *Nutrition, LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4844-5615-2796.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

## CERTIFICATE OF SERVICE

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants on this 11th day of February, 2021:

Amy Wilkins Hoffman
Laura Martinez
THE WILKINS LAW FIRM, PLLC
3300 N. Central Ave., Ste. 2600
Phoenix, AZ 85012
awilkins@wilkinslaw.net
lmartinez@wilkinslaw.net
*Attorneys for Respondent*

I certify that I mailed, via U.S. Mail, a copy of the attached document to the following non-registrants on this 11th day of February, 2021:

Laurence D. King
Mario M. Choi
KAPLAN FOX & KILSHEIMER LLP
1999 Harrison Street, Suite 1560
Oakland, CA 94612
lking@kaplanfox.com
mchoi@kaplanfox.com

Maia C. Kats
KAPLAN FOX & KILSHEIMER LLP
6109 32nd Place, Northwest
Washington, DC 20015
mkats@kaplanfox.com

Donald R. Hall
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
dhall@kaplanfox.com

Michael R. Reese
REESE LLP
100 West 93rd Street, 16th Floor
New York, NY 10025
mreese@reesellp.com

George V. Granade
REESE LLP
8484 Wilshire Blvd., Suite 515
Los Angeles, CA 90211
ggranade@reesellp.com
*Attorneys for Plaintiffs in the Underlying Civil Action*

 /s/  Richard A. Schaan